DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHANNON GALLAGHER,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D2024-2602

[June 11, 2025]

Petition for Writ of Certiorari to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Ernest A. Kollra, Jr., Judge; L.T. Case No. 22-012103CF10A.

Shannon Gallagher, Lake Worth, pro se.

James Uthmeier, Attorney General, Tallahassee, and Sorraya M Solages-Jones, Senior Assistant Attorney General, West Palm Beach, for respondent.

WARNER, J.

Petitioner files this petition for writ of certiorari challenging the denial of her motion to perpetuate testimony in the criminal case against her. We grant the petition, concluding that she has shown both irreparable harm and a departure from the essential requirements of law.

This is the second time this issue has been before us. In *Gallagher v. State*, 396 So. 3d 596 (Fla. 4th DCA 2024), we also granted a petition for writ of certiorari to perpetuate the testimony of witnesses. The trial court had denied petitioner the right to take all depositions in her criminal case in which the State has charged the petitioner with murder, because she is pro se. Yet, petitioner is a licensed attorney. In granting the petition we explained:

> We grant the petition as petitioner has good cause to depose witnesses such that the blanket prohibition departs from the essential requirements of law. [Citations omitted.]

First, we note that the general prohibition of a defendant's presence at a discovery deposition applies regardless of whether a defendant is represented by counsel. *See* Fla. R. Crim. P. 3.220(h)(7) ("A defendant shall not be physically present at a deposition except on stipulation of the parties or as provided by this rule."). The fact that petitioner is not only a pro se defendant below but also an attorney is also a relevant factor in the analysis. Thus, a blanket denial of petitioner's right to be present during discovery in a case like this would in essence force her to take on counsel when she has chosen not to do so.

Second, rule 3.220 provides a trial court the ability to take measures and impose limitations to protect deponents when necessary. *See, e.g.*, Fla. R. Crim. P. 3.220(h)(8) & (l)(1)-(2); [citation omitted.] . . . . These measures may similarly be considered and applied in cases involving pro se defendants.

Here, the trial court erred by prohibiting all discovery depositions without making any findings or considering any conditions necessary to prevent the problems which the trial court envisioned. Accordingly, we grant the petition and quash the order on review, remanding the case for further proceedings consistent with this opinion.

*Id.* at 597. Before we issued that opinion, the trial court denied the petitioner the right to perpetuate testimony of certain witnesses. That is the order which petitioner seeks to quash in this petition.

After this court's opinion issued, the trial court held a hearing to clarify its order on the perpetuation of testimony, noting that its ruling could no longer be based upon petitioner's pro se status. Instead, the State's response to the motion to perpetuate, which the trial court apparently adopted, stated that the witnesses' testimony was not relevant. Those are the reasons on which the State argues that the order should not be quashed.

To obtain certiorari relief, petitioner must show that she would suffer irreparable injury not remediable on appeal. *See Magbanua v. State*, 281 So. 3d 523, 515 (Fla. 1st DCA 2019). Petitioner has shown irreparable harm from the denial of her renewed motion to perpetuate testimony, because the out-of-state witnesses whom she seeks to depose have serious medical issues which could make their testimony unavailable if not taken now and thus would not be remediable on appeal. She supplied affidavits

where these witnesses averred their conditions, and the State did not contest them.

Petitioner has also shown a departure from the essential requirements of law. Rule 3.190(i)(1) provides:

> After the filing of an indictment or information on which a defendant is to be tried, the defendant or the state may apply for an order to perpetuate testimony. The application shall be verified or supported by the affidavits of credible persons that a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending a trial or hearing, that the witness's testimony is material, and that it is necessary to take the deposition to prevent a failure of justice. The court shall order a commission to be issued to take the deposition of the witnesses to be used in the trial and that any nonprivileged designated books, papers, documents, or tangible objects be produced at the same time and place. If the application is made within 10 days before the trial date, the court may deny the application.

The petitioner's motion complied with the rule's requirements. She submitted affidavits of the witnesses themselves, all of whom resided out of state, regarding their physical conditions and their testimony. That testimony included pertinent communications surrounding the decedent's death.

The State opposed the perpetuation of testimony by claiming that the proposed witnesses' testimony would not be "admissible" at trial for various reasons, but the State offered nothing to support that representation. Nor is there anything in the rule which mandates that a deposition cannot be taken unless it is entirely admissible at trial. What must be shown through affidavits is that the testimony is material. In a subsequent hearing, the trial court noted that it would determine admissibility once the defendant sought to use the depositions at trial. The trial court correctly stated, "that's going to be a decision I will have to make when and if you decide to use this deposition and enter it into evidence. That's when the decision will be made." Thus, the trial court's conclusion that it must review each deposition for admissibility suggests that it was inclined to grant the petitioner's right to perpetuate the testimony.

3

Whether a motion to perpetuate testimony should be allowed is subject to trial court discretion. *See Cherry v. State*, 781 So. 2d 1040, 1054 (Fla. 2000). Where the rule's requirements are satisfied, the court should grant the motion.

Notwithstanding, the trial court does not appear to have addressed whether the motion complied with the rule's requirements when it originally denied the motion to perpetuate, which is the order under consideration. Even the court's adoption of the State's response is unhelpful, because the State's response to the motion to perpetuate testimony does not address the testimony, other than to state that the testimony would be inadmissible "for various reasons," without explaining those reasons. Because of this, the court failed to follow rule 3.190(i), departing from the essential requirements of law.

While Judge Artau contends that disallowing the motion to perpetuate testimony potentially violates the Sixth Amendment's confrontation clause, that clause does not apply to this defendant's request to perpetuate the testimony of her own witnesses. The confrontation clause applies to witnesses *against* the defendant, not to a right of the defendant to confront his/her own witnesses. *See Gore v. State*, 599 So. 2d 978, 985 (Fla. 1992) ("While a defendant does have the right to be present when a witness testifies against him, no rule of criminal procedure, statute, or judicial decision has ever expanded this right into a right to be present at the deposition of a defense witness, and we decline to do so now.") Petitioner has not raised the compulsory process clause in her petition, and no judicial decision has applied it to a motion to perpetuate testimony. Instead, preventing the taking of the depositions may be a denial of due process where the petitioner has complied with all aspects of the rule and denial prevents her from presenting her defense. That issue has also not been addressed by the parties.

Therefore, we grant the petition, quash the order of September 13, 2024, which denied the motion to perpetuate testimony. We remand for further proceedings consistent with this opinion.

*Petition granted.*

GERBER, J., concurs specially with opinion.
ARTAU, J., concurs specially with opinion.

GERBER, J., concurring specially.

I agree that we should grant the petition pursuant to both Florida Rule of Criminal Procedure 3.190(i) and the Sixth Amendment's confrontation clause and compulsory process clause.

ARTAU, J., concurring specially.

I concur in result with the decision to grant the petition because the denial of the motion by the trial court violated the defendant's Sixth Amendment rights.

The Confrontation Clause and Compulsory Process Clause, both found in the Sixth Amendment, provide that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against [the accused and] to have compulsory process for obtaining witnesses in [the accused's] favor[.]"  U.S. Const. amend. VI.

The Confrontation Clause "comes to us on faded parchment" and has "a lineage that traces back to the beginnings of Western legal culture." *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988).  Indeed, "[t]he right to confront one's accusers is a concept that dates back to Roman times." *Crawford v. Washington*, 541 U.S. 36, 43 (1990) (citing Coy, 487 U.S. at 1015).  "The founding generation's immediate source of the concept, however, was the common law." *Id.*

"The common-law tradition is one of live testimony in court subject to adversarial testing, while the civil law condones examination in private by judicial officers." *Id.* (citing 3 William Blackstone, *Commentaries on the Laws of England* *373–74 (1768)).

The civil law rule, however, was not effective because "a witness may frequently depose that in private, which he [would] be ashamed to testify in a public and solemn tribunal" and "an artful or careless scribe may make a witness speak what he never meant, by dressing up his depositions in his own forms and language[.]"  3 William Blackstone, *Commentaries* *373.  For this reason, "the founding-era rhetoric decried" the civil law rule. *Crawford*, 541 U.S. at 50.

The Compulsory Process Clause, however, was not drafted to codify the common law tradition but rather to codify England's statutory abolition of the common law practices that inhibited the defendant's ability to put on a complete defense. *See Washington v. Texas*, 388 U.S. 14, 19-20 (1967) ("Although the absolute prohibition of witnesses for the defense had been

5

abolished in England by statute before 1787, the Framers of the Constitution felt it necessary to specifically provide that defendants in criminal cases should be provided the means of obtaining witnesses so that their own evidence, as well as the prosecution's, might be evaluated by the jury.").

In this respect, the common law initially applied the civil law rule, which did not allow "the party accused in capital cases to exculpate himself by the testimony of any witnesses." 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1786 (1st ed. 1833). Then, because of this rule's "unreasonable and oppressive character," the common law adopted a rule "of examining witnesses for the accused, but not [u]pon oath; the consequence of which was[] that the jury gave less credit to this latter evidence[] than to that produced by the government." *Id.*

But this practice too was "denounced . . . as tyrannical and unjust[,]" and the Founders believed that because of this rule, English trials were "crimsoned with the blood of persons, who were condemned to death, not only against law, but against the clearest rules of evidence." *Id.*

Thus, the Confrontation Clause and the Compulsory Process Clause work in tandem to ensure that a criminal defendant can put on a full and complete defense to the charges levied against him by the State. *See United States v. Burr*, 25 F. Cas. 30, 32 (Cir. Ct. D.Va. 1807) (opinion of Marshall, C.J.) ("The right of an accused person to the process of the court to compel the attendance of witnesses seems to follow, necessarily, from the right to examine those witnesses; and, wherever the right exists, it would be reasonable that it should be accompanied with the means of rendering it effectual.").

Applied here, the denial of the defendant's Rule 3.190(i) motion violated her Sixth Amendment rights.

The defendant's Compulsory Process Clause rights were violated because the denial of her motion prevented her from obtaining relevant evidence—the testimony of witnesses she wished to call at trial—that could disprove the charges against her, specifically that she neither killed the decedent nor had intent to do so. *See* § 90.401, Fla. Stat. (2025) ("Relevant evidence is evidence tending to prove or disprove a material fact."). In other words, the denial of her motion represented a return to the common law rule, which the Compulsory Process Clause abolished, preventing a criminal defendant charged with a capital felony from putting on a defense.

And as to the defendant's Confrontation Clause rights, these rights were potentially violated because she was denied face-to-face confrontation with witnesses whose testimony may be presented at defendant's trial based on their anticipated unavailability. The fact that she was the party who initially sought to perpetuate the testimony of these witnesses is immaterial at this stage in the proceeding because, theoretically, she could face the need to impeach their testimony or otherwise confront any testimony they may provide against her. *See* § 90.608, Fla. Stat. (2025) ("Any party, *including the party calling the witness*, may attack the credibility of a witness[.]" (emphasis added)).

Thus, to prevent the potential deprivation of this important constitutional right, a defendant should be permitted to be present at a deposition to perpetuate testimony regardless of which party initially seeks the testimony of a witness that may be unavailable at trial because "[t]he text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts. Rather, [it] . . . is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." *See Crawford*, 541 U.S. at 54; *see also Lopez v. State*, 397 So. 3d 1035, 1040 (Fla. 4th DCA 2024) (Artau, J., concurring specially). "[T]he common law in 1791 [upon ratification of the Bill of Rights] conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations." *Crawford*, 541 U.S. at 54. The defendant is entitled here to no less than what the Sixth Amendment requires.

## Conclusion

Because the defendant has proven a violation of her Sixth Amendment rights, she is entitled to the issuance of the writ of certiorari. I, therefore, concur with the majority's decision to grant her petition.

\*　　　　\*　　　　\*

***Not final until disposition of timely filed motion for rehearing.***

7